### Case No. 12,137.

RUNAWAYS & PETITIONERS FOR FREE-
DOM.

[4 Cranch, C. C. 489.] [1]

Circuit Court, District of Columbia. Nov.
Term, 1834.

MARSHAL'S FEES — IMPRISONMENT OF RUNAWAY
SLAVES—PETITIONERS FOR FREEDOM.

1. The marshal has not a right to include, in
his account against the United States, his im-
prisonment fees for persons committed as run-
away servants or slaves, under the adopted
laws of Maryland.

2. The marshal may include, in his account
against the United States, his fees for the
maintenance of petitioners for freedom commit-
ted by order of the court for safe keeping, if
they obtain their freedom; otherwise, their own-
ers must pay the marshal's fees for their main-
tenance in prison.

The following questions were submitted to
CRANCH, Chief Judge, by the attorney of
the United States and the marshal: Whether
the United States are liable to the marshal
for the maintenance of free colored persons
committed by justices of the peace as run-
aways, and discharged on habeas corpus;
and also for the maintenance of petitioners
for freedom, committed by order of the court
to attend the trial, &c. 1st. As to those
committed as runaways. (1) Is the marshal
bound to receive and feed them? (2) If so,
are the United States liable to him for his
fees for keeping and feeding free persons
committed as runaways, and discharged on
habeas corpus.

CRANCH, Chief Judge. By the act of
congress of the 27th of February, 1801 (2
Stat. 103), the laws of Maryland, as they then
existed, were continued in force in the coun-

ty of Washington. By the seventh section
the marshal is to "have the custody of the
gaols of the counties, and to be accountable
for the safe keeping of all prisoners legally
committed therein;" "and shall have the same
powers, and perform the same duties as is
by law directed and provided in the cases
of marshals of the United States;" and by sec-
tion 9, he is entitled to the same fees, per-
quisites, and emoluments, which are by law
allowed to the marshal of the Maryland dis-
trict.

By the act of congress of the 8th of May,
1792, § 4 (1 Stat. 275), the compensation to
the marshal for the maintenance of prisoners
confined in gaol for any criminal offence, and
for the commitment and discharge of such
prisoner, shall be included in the account
of the marshal; and the same having been
examined and certified by the court or one of
the judges, in which the service shall have
been rendered, shall be passed in the same
manner, at, and the amount thereof paid out
of, the treasury of the United States to the
marshal.

By the act of the 28th of February, 1795,
§ 9 (1 Stat. 424), "the marshals of the several
districts and their deputies shall have the
same powers in executing the laws of the
United States as sheriffs and their deputies
in the several states have, by law, in execut-
ing the laws of the respective states."

The question is: Were those prisoners legal-
ly committed for any criminal offence? For
if they were, the act of congress is imperative
that the compensation of the marshal for
their maintenance, and his fees for their
commitment and discharge, are to be in-
cluded in his account; which, when examined
and certified by the court, or one of its
judges, must be passed and paid at the Treas-
ury.

By the act of Maryland, 1715, c. 44, § 2,

---

[1] [Reported by Hon. William Cranch, Chief
Judge.]

it is enacted, that no servant, whether by indenture or otherwise, according to the custom of the country, or hired for wages, shall travel ten miles from the house of his master without a note under his hand, under the penalty of being taken as a runaway, and to suffer such penalties as are hereafter provided against runaways. And by the third section of the same act, any servant unlawfully absenting himself from his master, shall make satisfaction, by servitude or otherwise, at the discretion of the justices of the county court where such runaway servant did dwell, not exceeding ten days' service for any one day's absence, with such reasonable costs for his taking up, as the court should think fit, be it before or after the expiration of such servant's first time of servitude by indenture or otherwise. The fourth and fifth sections prohibit the harboring of servants or slaves. By the sixth section of the same act, it is enacted, that, "for the better discovery of runaways," "any person travelling out of the county where he shall reside or live, without a pass under the seal of the said county, if apprehended, not being sufficiently known, or able to give a good account of himself, shall be left to the discretion of the magistrate before whom he shall be brought, to judge thereof; and if, before such magistrate, such person, so taken up, shall be deemed and taken as a runaway, he shall suffer such fines and penalties as are hereby provided against runaways." The seventh section of the same act: "For the encouragement of all persons to seize and take up such runaways travelling without passes as aforesaid, not being able to give a sufficient account of themselves as aforesaid, shall have two hundred pounds of tobacco, to be paid by the owner of such runaway servant, (negro or slave.) And if such suspected runaways be not servants, and refuse to pay the same, they shall make satisfaction by servitude or otherwise, as the justices of the provincial and county courts where such persons are so apprehended and taken up, shall think fit." The eighth section gives a reward to Indians for apprehending runaway slaves. The ninth section provides that the person taken up shall be brought before the next magistrate, who is empowered to take him into custody, or otherwise secure him until he shall give "security to answer the premises," at the next court in the county; which court shall secure him until he can make satisfaction to the person who apprehended him. And the county commissioners are to cause a note of his name to be set up at the next adjacent court, and at the provincial court and secretary's office, that masters may know where to find their servants. The tenth section ascertains the freedom dues of servants according to the custom of the country. The eleventh, twelfth, and thirteenth sections forbid all persons to trade or deal with servants or slaves. The fourteenth, fifteenth, sixteenth,

seventeenth, eighteenth and nineteenth sections regulate the time of service of imported servants. The twentieth section gives a reward for taking up such servants and slaves, in Pennsylvania and Virginia, to be paid by the master or owner; but if the person so taken up be a freeman and refuse to pay the reward, the magistrate before whom he shall be brought shall forthwith commit such person to prison till he shall give security or make full satisfaction by servitude or otherwise. The twenty-first section provides for the humane treatment of servants by their masters, and limits their correction to ten lashes, unless by order of a magistrate, who cannot order more than 39. The twenty-second section declares all slaves imported and to be imported, and their children, to be slaves for life. The twenty-third, twenty-fourth, twenty-fifth, twenty-sixth, and twenty-seventh sections relate to marriage and sexual intercourse between whites and blacks. The twenty-eighth and twenty-ninth sections relate to female servants having bastard children. The thirtieth and thirty-first sections authorize the provincial and county courts to hear and determine complaints between masters and servants by way of petition without a jury. The thirty-second section prohibits slaves from carrying guns. The thirty-third section makes it felony in a servant to take and purloin his master's goods and prescribes the punishment. The thirty-fourth section enacts, that no sheriff or gaoler shall hold any suspected runaway longer than six months, he serving the sheriff or gaoler or his assigns so many days as he was in custody; or paying ten pounds of tobacco per day to the sheriff for his imprisonment fees, and no more, and paying to the person who took him up two hundred pounds of tobacco, or serving him twenty days in lieu thereof.

The act of May, 1719, c. 2, after premising that by the act of 1715, c. 44, relating to servants and slaves, "there is no provision made what shall be done with such runaway servants and slaves that now are or hereafter shall or may be taken up and committed to the custody of any sheriff within this province, where the master or owner of such servant or slave having due notice of such servant's or such slave's being in the custody of such sheriff, refuses or delays to redeem such servant or slave by paying their imprisonment fees, and such other charge as has or may accrue for taking up such servant or slave," enacts, "that every sheriff that now hath, or hereafter shall have, committed into his custody any runaway servants or slaves, after one month's notice given to the master or owner thereof, of their being in his custody, if living within this province; or two months' notice if living in any of the neighboring provinces, if such master or owner of such servants or slaves do not appear within the time limited as aforesaid and pay or secure to be paid all such imprisonment fees due

to such sheriff from the time of the commitment of such servants or slaves; and also such other charges as have accrued or become due to any person for taking up such runaway servants or slaves; such sheriff is hereby authorized and required, (such time limited as aforesaid being expired,) immediately to give public notice to all persons by setting up notes at the church and court-house doors of the county where such servant or slave is in custody, of the time and place of sale of such servants or slaves by him to be appointed, not less than ten days after such time limited as aforesaid, being expired; and at such time and place, by him appointed as aforesaid, to proceed to sell and dispose of such servant or slave to the highest bidder; and out of the money or tobacco which such servant or slave is sold for, to pay himself all such imprisonment fees as are his just due for the time he has kept such servant or slave in his custody; and also to pay such other charges, fees, or reward as has become due to any person for taking up such runaway servant or slave, and after such payments made, if any residue shall remain of the money or tobacco such servant or slave was sold for, such sheriff shall only be accountable to the master or owner of such servant or slave, for such residue or remainder as aforesaid,' and not otherwise."

By the act of 1751, c. 14, § 8, it is enacted, "that where any slave shall be guilty of riding, rambling, or going about in the night, or riding horses in the daytime without leave, or running away, it shall and may be lawful for the justices of the county court, and they are hereby obliged, upon the application or complaint of the master or owner of such slave, or to his, her, or their order, or on the application or complaint of any other person who shall be any ways damnified or injured by such slave, immediately such slave to punish by whipping, cropping, or branding in the cheek with the letter R; or otherwise, not extending to life or to render such slave unfit for labor."

By the act of May, 1766, c. 6, it is enacted, that all legal fees that shall arise on the prosecution of any negro or other slave in any county court, whether such slave shall be convicted or acquitted, shall be chargeable to and paid by, the respective county where such prosecution shall be had, and assessed in the county levy of such county.

The act of 1792, c. 72, is entitled "An act to restrain the ill practices of sheriffs, and to direct their conduct respecting runaways," and enacts as follows:

"Whereas, it is represented to this general assembly, that the sheriffs of the respective counties have neglected to advertise runaways to the great injury of the owners, therefore:

"2. Be it enacted, &c., that it be the duty of the several and respective sheriffs, and they are hereby required and directed, upon any runaway being committed to their custody, to cause the same to be advertised in some public newspaper, within twenty days after such commitment; and to make particular and minute description of the person, clothes, and any bodily marks of such runaway."

"3. And be it enacted, that if no person shall apply for such runaway within thirty days from such commitment, then it shall be the duty of such sheriff, if residing on the western shore, to cause the said runaway to be advertised, as heretofore directed, in the Maryland Journal and Georgetown Weekly Ledger; and if residing on the eastern shore, to cause the same to be advertised in the Maryland Herald, and Maryland Journal, within sixty days from such commitment, and to continue the same therein until the said runaway is released by due course of law.

"4. And be it enacted, that if any sheriff shall refuse or neglect to comply with the directions of this act he shall for every such refusal or neglect, forfeit and pay the sum of £20, current money, to the owner of such runaway."

By the act of 1715, c. 26, §§ 8, 9, it was enacted, "that no sheriff or other officer should charge the county or the public with any fees for any criminal committed to his charge having sufficient estate wherewith to pay the same, or being capable to pay the same by servitude; but that such criminals, being discharged by order and due course of law, shall pay their own fees to the officers out of his estate, or by servitude, or otherwise; provided that this act shall not extend to servants, criminals for whom the county shall pay such fees as are due to the officers." And by section 10, of the same act, all officers' fees due by law from criminal servants shall be paid by the county where the facts shall be committed; and such criminal servants shall, at the expiration of their time of servitude to their masters, pay the same to the commissioners of the county, (for the use of the county,) who shall make rules for the servants to make such reasonable satisfaction to the county as they shall think fit, and in such manner as they shall find convenient. And by the 11th section, the masters of such servants are required to deliver them up to the sheriff at the expiration of their servitude, under the penalty of paying the fees themselves; and the sheriff is to secure the servant to appear before the next county court to be disposed of as the court shall consider.

The act of 1727, c. 2, is entitled, "An act directing the payment of fees arising due on the prosecution of white servants which shall hereafter be imported into this province," and has the following preamble: "Forasmuch as it is evident to this present general assembly, that the charges of late arising to the public and several of the counties within this province, on the prosecution of servants, have been a very great burden to the public; and

whereas it is manifest that several felonies and other offences have been frequently committed which might have been prevented by their masters by taking care to keep them in due order and subjection; and sometimes servants have been induced by the encouragement, and sometimes by the severity of their masters, to commit felonies and other crimes, the masters well knowing that in case of prosecution the expense thereof must have been borne by the public, or the inhabitants of the county. or counties where the acts have been committed; for remedy of which evils, be it enacted," &c., "that it shall be lawful for the officers to whom any fees shall arise due on any prosecution of the lord proprietor against any servant that shall be imported into this province after the end of this session to recover the same from the masters as if they were their proper debts; and that it shall not be lawful for any officer to charge the public, or any county, for any fees on the prosecution of such servants, any law ·to the contrary notwithstanding." By the 3d section, it is provided, "that the owners of such servants, (unless the offence be capital, and the offender actually executed for the same,) at or before the expiration of the servant's servitude may carry him before the county court, who are to judge what time, not exceeding three years, the servant shall serve his master in recompense of the fees paid by the master."

The above seems to be all the statute law bearing upon the question. None of the laws of Maryland authorize the sheriff to charge the state or any county with the maintenance of persons committed as runaways. If the person committed be a servant, the fees are to be paid by the master, or by the prolonged servitude of the servant; if he be a slave the fees are to be paid by the owner; or by a sale of the slave; but if he be neither a servant nor a slave, and consequently not a runaway, there is no means provided by the law of Maryland for the recovery from the state, of the expenses of his maintenance in prison. The 7th, 9th, and 20th sections of the act of 1715, c. 44, authorize the condemnation of a free person to servitude only in case of refusal to pay the reward for apprehending him; not for the sheriff's fees .for his imprisonment. The 34th section of the act, however, impliedly subjects him to servitude to the sheriff or his assigns for the imprisonment fees and to the taker up, for the reward; but gives no authority to charge the state or the county with those fees. The act of 1719, c. 2, applies only to servants and slaves whose masters are known and have had notice. The act of 1766, c. 6, charges the county with the fees of prosecuting slaves in the county court, but does not apply to those taken up for running away, and punishable therefor under the act of 1751, c. 14, § 8. The act of 1715, c. 26, §§ 8, 9, only charged the county with the fees of prosecution of criminal servants; not with the imprisonment fees of run-

aways, and was repealed by the act of October, 1727, c. 2, which authorizes the officers to recover the fees of prosecution from the masters only, who are to be reimbursed by the prolonged services of the servants. The act of 1792, c. 72, is merely directory to the sheriffs to give certain public notices in addition to those previously required by the act of 1719, c. 2, but gives no new authority·to sell, or to charge the fees to the state or to the county. There is nothing, therefore, in the laws of Maryland which authorized the sheriff to charge the imprisonment fees of runaways to the public, or even to the county, in any case. It is under the Maryland law only that suspected runaways are liable to imprisonment in the county gaol. The same law directs the manner in which the sheriff is to recover his fees for the imprisonment, as far as it has made them recoverable at all. By the act of congress the law of Maryland is continued in force. To say that the sheriff, or the marshal who is substituted for the sheriff, shall have another remedy than that which is given by the Maryland law, is not to continue the old law, but to give a new law. But, by the act of congress of the 8th of May, 1792, § 4 (1 Stat. 275), the compensation of the marshal, for the maintenance of prisoners confined in gaol for any criminal offence, shall be included in his account, and paid out of the treasury of the United States.

Is this offence of running away, which is made such by the Maryland law only, such a criminal offence as is·contemplated by the act of congress? Did congress intend to relieve the master of the servant, and the owner of the slave, and the servant and slave, also, from the payment of those fees? The act of congress, in terms, applies, at least, as strongly to the case of a servant or slave who is actually a runaway, as to a person who is wrongfully committed as such. The law of Maryland imposes no fine on a runaway, for the benefit of the state or county, and gives the state no right to costs against him; indeed, it does not subject him to a public prosecution. The punishment of a slave, for running away, is to be inflicted by the justices of the county court, under the act of 1751, c. 14, § 8, only upon the application, complaint, or order of the master or owner, or upon the application or complaint of some person damnified or injured by such slave; and by the words of the act, the justices are obliged, immediately upon such application, to inflict the punishment in a summary way, without a trial. Such a proceeding cannot be called a prosecution, within the meaning of the act of 1766, c. 6. The law of Maryland was evidently made for the sole benefit of masters, and the public was no otherwise concerned, than as the law tended to give a greater security to that kind of property which a master has in the services of his servant or slave. The only penalty upon a runaway servant was compensation to the master for the loss

of his service, and the payment of his imprisonment fees, and a reward to the person who apprehended him. All this enured to the benefit of individuals, not of the public. I do not think that running away is such a criminal offence as is contemplated by the act of congress of the 8th of May, 1792, § 4 (1 Stat. 275). It seems to me that the law of Maryland, which was continued in force, should be executed, after the separation, in the same manner as it was executed before; and that the marshal has no more right to look to the United States for payment of his fees, than the sheriff had to look to the state of Maryland, before the separation. Such was the construction of the adopted laws, by the judges of this court, immediately after the separation, and acquiesced in by the respective marshals, as I believe, up to the present time —a period of twenty-four years. In point of fact, I believe there have been very few, if any, legal commitments of persons, as runaways. I have seen many of the warrants of commitment, and I do not remember to have seen one which would, in my opinion, justify the marshal in detaining the prisoner. The justice, generally, only says that the person was brought before him as a runaway, and requires the marshal to receive and keep him until discharged in due course of law. The justice does not state that he has good cause, supported by oath, to believe that the person is a servant or slave, (without which he cannot be a runaway,) nor even that he has adjudged him to be a runaway; at least, I have never seen a warrant of commitment which states that the person has been convicted, before the justice, of being a runaway. Before a justice of the peace can lawfully commit a person as a runaway, I imagine the justice must have examined the circumstances and the evidence, and must have exercised his judgment; and must be satisfied, by testimony, upon oath or solemn affirmation, that the person is really a runaway. If a person be found travelling out of the county where he resides, without a pass, under the seal of the county, he may, under the 6th section of the act of 1715, c. 44, be taken up and carried before a justice of the peace; but the circumstance of travelling without a pass, is not, of itself, sufficient to justify the magistrate in committing him as a runaway. He is still to inquire whether the person is sufficiently known, and what account he can give of himself, and not to commit him unless he shall be satisfied by the evidence, and shall adjudge that he ought to be deemed and taken as a runaway. Color is said to be evidence of slavery; and a slave found abroad, without a pass, is liable to be taken up, as a runaway, and carried before a justice of the peace; but the circumstance of his being found without a pass, is not alone sufficient to justify the magistrate in committing him as a runaway. The justice is still bound to inquire into the circumstances, and to exercise his judgment; and must adjudge him to be a runaway before he can lawfully commit him. Color is only prima facie evidence of slavery, and may be rebutted by other evidence, such as, that the prisoner has long lived and acted publicly as a free man, or evidence that his mother was a free woman, &c. In all cases of commitment the justice ought to be satisfied, by evidence, as I apprehend, that the person is a runaway servant or slave. Upon the whole, I am of opinion that the marshal has not a right to include, in his account against the United States, his imprisonment fees for persons committed as runaway servants or slaves under the adopted laws of Maryland.

The other question submitted, is whether the United States are liable to the marshal for the maintenance of petitioners for freedom, committed, by order of the court, for safe keeping, because their pretended masters or owners will not give security for the petitioners' appearance in court, to attend the trial, &c. When a petition for freedom is filed, it has been long the practice of the courts in Maryland, before they will permit the defendant or respondent to appear in the cause, to require him to give security, by way of recognizance, for the appearance and security of the petitioners. If the defendant should refuse to give such security, there might be a failure of justice, by the defendant seizing the petitioners and removing them from the jurisdiction of the court. To prevent this failure of justice, the court, where they have had reason to believe that the defendant would be guilty of such a contempt, have ordered the marshal to take and safely keep the petitioners until the trial, or until the defendant will give the security required by the rules of the court. The expense of maintaining them in the custody of the marshal, for that purpose, is one of the reasonable contingencies accruing in holding the court, and ought to be allowed if the petitioners gain their freedom; otherwise, that expense must be paid by their owners.